PLEASE STAMP AND RETURN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BRANCH BANKING & TRUST COMPANY,**
**a North Carolina banking corporation**
**1909 K Street, N.W.**
**2nd Floor**
**Washington, D.C.  20006,**

                           **Plaintiff,**

        **v.**

**HUDSON RIVER PARTNERS, L.P.,**
**a Delaware Limited Partnership**
Serve:
    **Douglas P. Bennett,**
    **Managing Member**
    **2884 Woodland Drive NW**
    **Washington DC, 20008,**

**HUDSON RIVER PARTNERS, INC.,**
**a Delaware corporation**
Serve:
    **Douglas P. Bennett, President**
    **2884 Woodland Drive NW**
    **Washington DC, 20008,**

**HRP FINANCE CORPORATION,**
**a Delaware corporation**
Serve:
    **Douglas P. Bennett, Vice President**
    **2884 Woodland Drive NW**
    **Washington DC, 20008,**

              **and**

**DOUGLAS P. BENNETT**
**2884 Woodland Drive NW**
**Washington DC, 20008,**

                     **Defendants.**

**Civil Action No. _____**

CASE NUMBER  1:06CV00318

JUDGE: Rosemary M. Collyer

DECK TYPE: Contract

DATE STAMP: 02/23/2006

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

# COMPLAINT

COMES NOW Plaintiff Branch Banking and Trust Company ("BB&T"), by counsel, and for its Complaint against the Defendants avers:

## PARTIES AND JURISDICTION

1.    Plaintiff BB&T is a North Carolina national banking corporation with its principal office located in North Carolina.

2.    Defendant Hudson River Partners, L.P. ("Hudson Partners") is a Delaware limited partnership.  Upon information and belief, it is authorized to do business as a foreign corporation in the District of Columbia.

3.    Defendant Hudson River Partners, Inc. ("Hudson Inc.") is a Delaware for profit stock corporation.  Upon information and belief, it is authorized to conduct business as a foreign corporation in the District of Columbia.  Hudson Inc., is one of two general partners of Hudson Partners.

4.    Defendant HRP Corporation ("HRP") is a Delaware for profit stock corporation.  Upon information and belief, it is authorized to conduct business as a foreign corporation in the District of Columbia. HRP is the other general partner of Hudson Partners.

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

2

5.     Defendant Douglas P. Bennett ("Bennett") is a natural person and a resident of the District of Columbia.

6.     This action concerns contracts that were executed and performed in the District of Columbia.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

8.     Venue properly lies in the District of Columbia, *inter alia,* by virtue of Hudson Partners' contractual consent thereto, and that the transactions complained against occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

9.     On or about March 13, 2002, Hudson Partners became indebted to BB&T in the amount of $700,000.00.   The debt was evidenced by a Promissory Note executed by Hudson Partners payable to BB&T, and Note Modification Agreements dated March 19, 2003, April 24, 2003, July 23, 2003, October 21, 2003, July 21, 2004, September 13, 2004, November 17, 2004, and February 18, 2005 (collectively, the "Note").   True and correct copies of the Note are attached hereto as Exhibit 1 and are incorporated herein by reference.

10.     Prior to execution of the Promissory Note, and as part of the loan transaction contemplated by the parties, Hudson Partners also executed a Declaration of Partnership and Authority to Borrow dated

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC
———
(202) 872-0800

3

March 9, 2001 ("Declaration"); and Hudson Partners and Bennett executed a loan agreement dated March 9, 2001 ("Loan Agreement"). A true and correct copy of the Declaration and the Loan Agreement are attached hereto as Exhibits 2 and 3, respectively, and the same are incorporated herein by reference.

11.    The Loan Agreement executed by Hudson Partners and Bennett provides, *inter alia,* in § 2.03, that Hudson Partners' making of any loans, the performance thereof, and the granting of the Collateral, would not violate any other agreement, indenture, or other instrument which is binding upon Hudson Partners, nor give cause to the acceleration of any of the obligations of Hudson Partners.

12.    The Loan Agreement executed by Hudson Partners and Bennett provides, *inter alia,* in § 5.01, that Hudson Partners shall not make any additional loans, nor pledge any of its assets, nor grant any liens against its property without the prior written consent of BB&T first obtained, unless as here relevant, such lien is granted pursuant to a purchase money transaction and the lien attaches only to the property acquired in return for the granting of the lien or pledge.

13. The Note is further secured by the personal unlimited and unconditional guaranty of Defendant Bennett pursuant to Guaranty

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

Agreements dated March 9, 2001, and October 21, 2003 (the "Guaranties"). A true and correct copy of the Guaranties is attached hereto as Exhibit 4, and the same are incorporated herein by reference.

14. The Note is secured by all accounts, inventory, equipment, and general intangibles (the "Collateral") of Hudson Partners pursuant to a Security Agreement dated March 13, 2002 ("Security Agreement"). BB&T has perfected its security interest as required and permitted under the Uniform Commercial Code. A true and correct copy of the Security Agreement is attached hereto as Exhibit 5, and is incorporated herein by reference.

15. As of February 13, 2006, the amounts owed to BB&T, including interest, late fees, and a reasonable attorneys' fee is as follows:

| | |
|---|---|
| Principal | $684,907.98 |
| Interest | $32,637.03 |
| Late Charge | $3,467.85 |
| TOTAL | $721,012.86 |
| *per diem* after February 13th | $180.74 |

16. Pursuant to the Note, Hudson Partners is liable for all costs incurred by BB&T in this litigation, including attorneys' fees.

17. Upon information and belief, each of the Defendants had actual knowledge prior to the time the Loan Agreement was made, and

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

5

prior to the original loan of money by BB&T to Hudson Partners, that Hudson Partners was prohibited from making the loan, from becoming indebted to BB&T, and from encumbering any of its assets as set forth in the Security Agreement. Upon information and belief, none of the Defendants informed BB&T of this prohibition, and did intentionally and knowingly withhold such information from BB&T, with the express intent of using such deception to aid their scheme to obtain money loaned from BB&T.

### COUNT I
### *(Breach of Contract—Hudson Partners)*

18.    BB&T  hereby incorporates each of the above allegations as if fully restated herein.

19.    The Note constitutes a valid and enforceable contract between BB&T and Hudson Partners.

20.    Hudson Partners has failed and refused to make the required payments as agreed in the Note.  Accordingly, Hudson Partners is in default of the Note.

21.    Hudson Partners's failure and refusal to make the required payments under the Note constitutes breach of contract.

22.    Pursuant to its rights under the Note, BB&T has accelerated the Note and deemed the entire Note to be due and payable.

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

23.    As a result of Hudson Partners's breach of contract, BB&T has incurred damages, totaling not less than $721,012.86, together with any additional interest, late charges, all attorneys' fees and other costs of collection that may accrue until paid in full.

### COUNT II
### *(Breach of Contract—Hudson, Inc.)*

24.    BB&T hereby incorporates each of the above allegations as if fully restated herein.

25.    Hudson Inc., is a general partner of Hudson Partners. It is liable in that capacity for the debts of Hudson Partners and may be sued directly therefor.

### COUNT III
### *(Breach of Contract—HRP)*

26.    BB&T hereby incorporates each of the above allegations as if fully restated herein.

27.    HRP is a general partner of Hudson Partners. It is liable in that capacity for the debts of Hudson Partners and may be sued directly therefor.

### COUNT IV
### *(Breach of Contract—Bennett)*

28.    BB&T hereby incorporates each of the above allegations as if fully restated herein.

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

7

29.    Bennett breached his obligations under the Guaranties Guaranty by failing to repay the Note and the other obligations incurred by Hudson Partners under the various loan documents upon demand.

### COUNT V
#### (Fraud in the Inducement—All Defendants)

30.    BB&T  hereby incorporates each of the above allegations as if fully restated herein.

31.    Defendants had actual knowledge that they were prohibited by prior binding contractual agreements from entering into the loan transaction with BB&T.

32.    Defendants had actual knowledge that BB&T was relying on the representations in the loan documents in making its lending decision.

33.    BB&T reasonably relied on those representations to its detriment.

34.    Defendants' conduct in concealing and/or in failing to disclose, the prohibitions described above, constitutes actual fraud.

35.    As a result of Defendants' fraud, BB&T has incurred actual damages totaling not less than $721,012.86, together with any additional interest, late charges, all attorneys' fees and other costs of collection that may accrue until paid in full.

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

8

36.    Defendants' conduct was willful and intentional.  Accordingly, an appropriate award of punitive damages is warranted.

**WHEREFORE**, BB&T prays for judgment against the Defendants, jointly and severally, in the amount of not less than $721,012.86, together with all unpaid interest and late charges, as well as any other amounts and charges due under the Note, together with costs and an award of attorneys' fees as and for compensatory damages; punitive damages in an amount to be determined by the Court sufficient to punish Defendants and deter future similar wrongful conduct; and such other relief this Court determines to be just and reasonable.

Respectfully submitted,
**FRIEDLANDER, MISLER, SLOAN, KLETZKIN & OCHSMAN, PLLC**


By: _____
Robert E. Greenberg, Esq. #173708
Thomas F. Murphy, Esq.
1101 17th Street, NW
Suite 700
Washington, DC  20036-4704
(202) 872-0800
*Attorneys for Plaintiff*

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

9

# EXHIBIT 1

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

Borrower: HUDSON RIVER PARTNERS LP

Account Number: 956-0082298

Address: 700 NEW HAMPSHIRE AVE NW # 415
WASHINGTON, DC 20037

Note Number: 00002

**BB&T**

District of Columbia

Date: MARCH 13, 2002

# PROMISSORY NOTE

THE UNDERSIGNED REPRESENTS THAT THE LOAN EVIDENCED HEREBY IS BEING OBTAINED FOR BUSINESS/COMMERCIAL OR AGRICULTURAL PURPOSES. For value received, the undersigned, jointly and severally, if more than one, promises to pay to **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation (the "Bank"), or order, at any of Bank's offices in the above referenced city (or such other place or places that may be hereafter designated by Bank), the sum of

SEVEN HUNDRED THOUSAND DOLLARS & 00/100

Dollars ($ 700,000.00 ), together with accrued interest thereon, in immediately available coin or currency of the United States of America.

[ ] Borrower shall pay a prepayment penalty as set forth in the

Prepayment Penalty Addendum attached hereto.

Interest shall accrue from the date hereof on the unpaid principal balance outstanding from time to time:

[ ] Fixed rate of _____ % per annum.

[X] Variable rate of the Bank's Prime Rate plus __1.00__ % per annum to be adjusted Daily _____ as the Bank's Prime Rate changes. If checked here [ ], the interest rate will not exceed a(n) [ ] fixed [ ] average maximum rate of _____ % or a [ ] floating maximum rate of the greater of _____ % or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum rate of _____ %. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: [ ] when Note is repaid in full by Borrower [ ] annually beginning on _____

[ ] Fixed rate of _____ % per annum through _____ which automatically converts on _____ to a variable rate equal to the Bank's Prime Rate plus _____ % per annum which shall be adjusted _____ as such Prime Rate changes.

[ ] _____

**Principal and interest is payable as follows**

[X] Principal (plus any accrued interest not otherwise scheduled herein) is due in full at maturity on MARCH 13, 2003

[ ] Principal plus accrued interest

[ ] Payable in consecutive _____ installments of [ ] Principal [ ] Principal and Interest } commencing on _____ and continued on the same day of each calendar period thereafter, in _____ equal payments of $_____ , with one final payment of all remaining principal and accrued interest due on _____

[ ] ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____

[X] Accrued interest is payable Monthly commencing on APRIL 13, 2002 and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on MARCH 13, 2003

[ ] Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.

[X] Prior to an event of default, Borrower may borrow, repay, and reborrow hereunder pursuant to the terms of the Loan Agreement, hereinafter defined.

[ ] _____

[ ] Borrower hereby authorizes Bank to automatically debit from its demand, deposit, or savings account(s) with Bank, any payment(s) due under this Note on the date(s) due.

The undersigned shall pay to Bank a late fee in the amount of five percent (5%) of any installment past due for ten (10) or more days. When any installment payment is past due for ten (10) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.

All interest shall be computed and charged for the actual number of days elapsed on the basis of a year consisting of three hundred sixty (360) days. In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or additional supplemental interest payments required on the same periodic basis specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as the interest accruals exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount.

This note ("NOTE") is given by the undersigned in connection with the following agreements (if any) between the undersigned

Deed(s) of Trust / Mortgage(s) granted in favor of Bank as beneficiary / mortgagee:

[ ] dated _____ in the maximum principal amount of $ _____

granted by _____

[ ] dated _____ in the maximum principal amount of $ _____

granted by _____

*ACCOUNT# / NOTE#*

Security Agreement(s) granting a security interest to Bank:

[X] dated __MARCH 13, 2002_____ given by __HUDSON RIVER PARTNERS LP_____

[ ] dated _____ given by _____

[ ] Securities Account Pledge and Security Agreement  dated _____, executed

[ ] Control Agreement(s) dated _____, covering   [ ] Deposit Account(s)   [ ] Investment Property
                                                                [ ] Letter of Credit Rights   [ ] Electronic Chattel Paper

[ ] Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated_____
    _____, executed by _____

[ ] Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____, executed
    by _____

[ ] Assignment of Life Insurance Policy as Collateral dated _____, executed by

[X] Loan Agreement dated __MARCH 9, 2001_____, executed by Borrower and   [X]  Guarantor(s).

[ ] _____

All of the terms, conditions and covenants of the above described agreements (the "Agreements") are expressly made a part of this Note by reference in the same manner and with the same effect as if set forth herein at length and any holder of this Note is entitled to the benefits of and remedies provided in the Agreements and any other agreements by and between the undersigned and the Bank.

No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or of any other right on any future occasion. Every one of the undersigned and every endorser or guarantor of this note regardless of the time, order or place of signing waives presentment, demand, protest and notices of every kind and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there be available to the holder collateral for this note, and to the additions or releases of any other parties or persons primarily or secondarily liable.

The failure to pay any part of the principal or interest when due on this Note or to fully perform any covenant, obligation or warranty on this or on any other liability to the Bank by any one or more of the undersigned, by any affiliate of the undersigned (as defined in 11USC Section (101) (2)), or by any guarantor or surety of this Note (said affiliate, guarantor, and surety are herein called Obligor); or if any financial statement or other representation made to the Bank by any of the undersigned or any Obligor shall be found to be materially incorrect or incomplete; or in the event of a default under any of the Agreements or any other obligation of any of the undersigned or any Obligor in favor of the Bank; or in the event the Bank demands that the undersigned secure or provide additional security for its obligations under this Note and security deemed adequate and sufficient by the Bank is not given when demanded; or in the event one or more of the undersigned or any Obligor shall die, terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or where a proceeding under bankruptcy or insolvency laws is initiated by or against any of the undersigned or any Obligor; or in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired; or if there is an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Obligor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower or any Obligor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; or the termination of any guaranty agreement given in connection with this Note, then any one of the same shall be a material default  hereunder and this Note and any other debts due the Bank by any one or more of undersigned shall immediately become due and payable without notice, at the option of the Bank. From and after any event of default hereunder, at the option of the Bank, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest  permitted by the laws of the District of Columbia; and further provided that such rate shall apply after judgement. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate called for hereunder until such principal and interest have been paid in full. In addition, upon default, the Bank may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Bank to any party including any Obligor.  Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

The term "Prime Rate," if used herein, means the rate of interest per annum announced by the Bank from time to time and adopted as its Prime Rate which is one of several rate indexes employed by the Bank when extending credit. Any change in the interest rate resulting from a change in the Bank's Prime Rate shall become effective as of the opening of business on the effective date of the change. If this Note is placed with an attorney for collection, the undersigned agrees to pay, in addition to principal and interest, all costs of collection, including but not limited to reasonable attorneys' fees. All obligations of the undersigned and of any Obligor shall bind his heirs, executors, administrators, successors, and/or assigns. Use of the masculine pronoun herein shall include the feminine and the neuter, and also the plural. If more than one party shall execute this Note, the term "undersigned" as used herein shall mean all the parties signing this Note and each of them, and all such parties shall be jointly and severally obligated hereunder. Wherever possible, each provision of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the undersigned hereby waive all exemptions and homestead laws. The proceeds of the loan evidenced by this Note may be paid to any one or more of the undersigned.

From time to time the maturity date of this Note may be extended, or this Note may be renewed in whole or in part, or a new note of different form may be substituted for this Note, or the rate of interest may be modified, or changes may be made in consideration of loan extensions, and the holder hereof, from time to time may waive or surrender, either in whole or in part any rights, guaranties, security interest or liens, given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrence shall in any manner affect, limit, modify, or otherwise impair any rights, guaranties or security of the holder not specifically waived, released, or surrendered in writing, nor shall the undersigned makers, or any guarantor, endorser, or any person who is or might be liable hereon, either primarily or contingently, be released from such event. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon, and such release shall not affect or discharge the liability of any other person who is or might be liable hereon. No waivers and modifications shall be valid unless in writing and signed by the Bank. The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Note permitted by applicable law. In case of a conflict between the terms of this Note and the Loan Agreement or Commitment Letter issued in connection herewith, the priority of controlling terms shall be first this Note, then the Loan Agreement, and then the Commitment Letter. This Note shall be governed by and construed in accordance with the laws of the District of Columbia.

## CREDIT LIFE AND DISABILITY INSURANCE

Subject to certain underwriting criteria and limitations, INDIVIDUAL BORROWERS AND ADDITIONAL CO-MAKERS HAVE THE RIGHT TO REQUEST CREDIT LIFE AND DISABILITY INSURANCE PROTECTION FOR THIS LOAN. One or two Borrowers/Co-makers may be covered by BB&T Credit Life Insurance.and one Borrower/Co-maker may be covered by BB&T Credit Disability Insurance. However, the purchase of credit life and credit disability insurance from the Bank is not a condition of obtaining this loan.

I, the undersigned, desire the credit insurance with the cost and terms described below and promise to pay the premium of such insurance coverage. I understand that I may cancel this credit insurance at any time. I represent that, to the best of my knowledge, I am in good health and am insurable.

☐ Product I : Complete the following:          ☐ Fidelity Security Insurance Company Flex Plan (Complete separate application)

CREDIT LIFE INSURANCE          Effective Date     Term in Mos.     Amount Financed     Interest Rate     Credit Life Premium

☐ Single     ☐ Level
☐ Joint      ☐ Decreasing          _____ _____ $ 700,000.00 _____ 5.75 _____ $ _____

CREDIT DISABILITY INSURANCE          Monthly Benefit Amount                    Credit Disability Premium
Effective Date and Terms in Mos.
Same as Credit Life Insurance Above          $ _____     $ _____

Credit Disability Insurance is subject to a 14-day elimination period and a 60-month maximum benefit period. Only the Borrower or Co-Maker who signs the first line under "Signature(s) of Insured" is covered by Credit Disability Insurance.

# BB&T

## PROMISSORY NOTE SIGNATURE PAGE

Borrower: HUDSON RIVER PARTNERS LP

Account Number: 956-0082298

Note Amount: 700,000.00

Note Number: 00002

Date: MARCH 13, 2002

**Notice of Right to Copy of Appraisal:** If a 1-4 family residential dwelling is pledged as collateral for this Note, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. If you wish to receive a copy, please notify in writing the branch office where you applied for credit. You must forward your request to the Bank no later than 90 days after the date of this Note. your request letter, please provide your name, mailing address, appraised property address, the date of this Note, and the Account and Note Numbers shown on the front of this Note.

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this note to be executed under seal

### If Borrower is a Corporation:

ATTEST: _____

Title: _____

(Affix seal or insert name of corporation in seal to adopt as seal of Borrower)

Corporation Seal

_____
NAME OF CORPORATION

By: _____

Title: _____

By: _____

Title: _____

### If Borrower is a Partnership, Limited Liability Company, or Limited Liability Partnership:

WITNESS: _Greg Brey_ (signature) _____

HUDSON RIVER PARTNERS LP
NAME OF PARTNERSHIP, LLC, OR LLP

By: _Douglas Bennett_ (signature) _____ (SEAL)
GENERAL PARTNER OR MANAGER

Hudson River Partners Inc.
Douglas P. Bennett
President

### If Borrower is an Individual

WITNESS: _____

_____ (SEAL)

WITNESS: _____

### Additional Co-makers

*Maker  HUDSON RIVER PARTNERS LP

Address  700 NEW HAMPSHIRE AVE NW # 415

WASHINGTON, DC 20037-2406

## BB&T

9560082298
Customer Number

00002
Note Number

## NOTE MODIFICATION AGREEMENT

$ ___700,000.00___     ___03/13/2002___     $ ___686,333.33___     ___03/19/2003___
Original Amount of Note          Original Date              Modification Amount           Modification Date

This Note Modification Agreement (hereinafter Agreement) is made and entered into this ___19th___ day of ___March, 2003___ by and between HUDSON RIVER PARTNERS LP maker(s), co-maker(s), endorser(s), or other obligor(s) on the Promissory Note (as defined below), hereinafter also referred to jointly and severally as Borrower(s); Branch Banking and Trust Company, a North Carolina banking corporation, hereinafter referred to as Bank; and

owners other than Borrower(s) (if any) of any property pledged to secure performance of Borrower(s)'s obligations to Bank, hereinafter referred jointly and severally as Debtor(s)/Grantor(s).

Witnesseth: Whereas, Borrower(s) has previously executed a Promissory Note payable to Bank, which Promissory Note includes the origi Promissory Note and all renewals, extensions and modifications thereof, collectively "Promissory Note", said Promissory Note being more particula identified by description of the original note above; and Borrower(s) and Bank agree that said Promissory Note be modified only to the limited exte as is hereinafter set forth; that all other terms, conditions, and covenants of said Promissory Note remain in full force and effect, and that all oth obligations and covenants of Borrower(s), except as herein modified, shall remain in full force and effect, and binding between Borrower(s) and Ban and Whereas Debtor(s)/Grantor(s), if different from Borrower(s), has agreed to the terms of this modification; NOW THEREFORE, in mutu consideration of the premises, the sum of Ten Dollars ($10) and other good and valuable consideration, each to the other parties paid , the parti hereto agree that said Promissory Note is amended as hereinafter described:

[ ]  Borrower shall pay a prepayment penalty as set forth in the Prepayment Penalty Addendum attached hereto.

INTEREST RATE, PRINCIPAL AND INTEREST PAYMENT TERM MODIFICATIONS (To the extent no change is made, existing terms continue. Sections not completed are deleted.)

Interest shall accrue from the date hereof on the unpaid principal balance outstanding from time to time at the:

[ ]  Fixed Rate of _____ % per annum.

[X]  Variable rate of the Bank's Prime Rate plus ___2.250___ % per annum to be adjusted _____ ___Daily___ as the Bank's Prime Rate changes.

[ ]  As of the Modification Date, any fixed, floating, or average maximum rate and fixed minimum rate in effect by virtue of the Promissory Note(s are hereby deleted. If checked here [ ] , the interest rate will not exceed a(n) [ ] fixed [ ] average maximum rate of ___ % or a [ ] floating maximum rate of the greater of _____ % or the Bank's Prime Rate; and the interest rate will not decrease below a fixe minimum rate of _____ %. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: [ ] when the Note is repaid in full by Borrower [ ] annually beginning on _____ .

[ ]  _____

Principal and interest are payable as follows:

[ ]  Principal (plus any accrued interest not otherwise scheduled herein) } is due in full at maturity on _____

[ ]  Principal plus accrued interest

[X]  Payable in consecutive ___Monthly___ installments of [ ] Principal [X] Principal and interest } commencing on ___04/23/2004___ and continuing on the same day of each calendar period thereafter, in ___2___ equal payments of $ ___5,000.00___ , with one final payment of all remaining principal and accrued interest due on ___06/23/2004___ .

[ ]  ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each month thereafter, with one final payment of all remaining principal and accrued interest due on _____ .

[ ]  Accrued interest is payable _____ commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on _____ .

[ ]  Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.

[ ]  Prior to an event of default, Borrower may borrow, repay, and reborrow pursuant to the terms of a Loan Agreement dated _____ between Borrower and Bank.

[ ]  _____

[ ]  Borrower(s) hereby authorizes Bank to automatically debit from its demand deposit or savings account(s) with Bank, any payment(s) due under this Note on date(s) due.

The following scheduled payment(s) is (are) deferred:

[ ]  $ _____ principal

[ ]  $ _____ interest } payment(s) due on _____

[ ]  $ _____ principal and interest

is (are) hereby deferred. Payments will resume on _____ according to the schedule contained herein or to the existing schedule (if no other changes are made herein).

The Borrower(s) promises to pay Bank, or order, a late fee in the amount of five percent (5%) of any installment past due for ten (10) or more days. Where any installment payment is past due for ten (10) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.

COLLATERAL: ☐ The Promissory Note, as modified, and the performance of the terms of any agreement or instrument relating to, evidencing, or securing the Promissory Note, as modified, shall be additionally secured by collateral hereinafter described, a new security instrument shall be executed by Borrower(s), and/or Debtor(s)/Grantor(s), and all other steps necessary to perfect or record the Bank's lien with priority acceptable to Bank shall be taken.

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

☐ _____

☐ The collateral hereinafter described shall be and hereby is deleted as security interest for payment of the aforesaid Promissory Note:

_____

_____

OTHER: _____

If the Promissory Note being modified by this Agreement is signed by more than one person or entity, the modified Promissory Note shall be the joint and several obligation of all signers and the property and liability of each and all of them. It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of the Borrower(s) as evidenced by the Promissory Note above described is not extinguished hereby. It is also understood and agreed that except for the modification(s) contained herein said Promissory Note and any other Loan Documents or Agreements evidencing, securing or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or affect the liability of any co-makers, obligors, endorsers or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to the terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased or supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as any interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in any variable interest rate based on an index such as the Bank's Prime Rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount. Notwithstanding any other provision contained in this agreement, in no event shall the provisions of this paragraph be applicable to any Promissory Note which requires disclosures pursuant to the Consumer Protection Act (Truth-in-Lending Act), 15 USC § 1601, et seq., as implemented by Regulation Z.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan and shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due.

The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Promissory Note(s) as permitted by applicable law.

In the words "Prime Rate", "Bank Prime Rate", "BB&T Prime Rate", "Bank's Prime Rate" or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as its Prime Rate. The Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

Unless otherwise provided herein, it is expressly understood and agreed by and between Borrower(s), Debtor(s)/Grantor(s) and Bank that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper, and equipment) given as security to insure faithful performance by Borrower(s) and any other third party of any and all obligations to Bank, however created, whether now existing or hereafter arising, shall remain as security for the Promissory Note as modified hereby.

It is understood and agreed that if Bank has released collateral herein, it shall not be required or obligated to take any further steps to release said collateral from any lien or security interest unless Bank determines, in its sole discretion, that it may do so without consequence to its secured position and relative priority in other collateral; and unless Borrower(s) bears the reasonable cost of such action. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same, or of any other right on any further occasion. Each of the parties signing this Agreement regardless of the time, order or place of signing waives presentment, demand, protest, and notices of every kind, and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of any other parties or persons primarily or secondarily liable. Whenever possible the provisions of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All rights and obligations arising hereunder shall be governed by and construed in accordance with the laws of the same state which governs the interpretation and enforcement of the Promissory Note.

From and after any event of default under this Agreement, the Promissory Note, or any related deed of trust, security agreement or loan agreement, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the District of Columbia; and further that such rate shall apply after judgement. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate until such principal and interest have been paid in full. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

---

### CREDIT LIFE AND DISABILITY INSURANCE

Subject to certain underwriting criteria and limitations, INDIVIDUAL BORROWERS AND ADDITIONAL CO-MAKERS HAVE THE RIGHT TO REQUEST CREDIT LIFE AND DISABILITY INSURANCE PROTECTION FOR THIS LOAN. One or two Borrowers/Co-makers may be covered by BB&T Credit Life Insurance and one Borrower/Co-maker may be covered by BB&T Credit Disability Insurance. However, the purchase of credit life and credit disability insurance from the Bank is not a condition of obtaining or maintaining this loan.

I, the undersigned, desire the credit insurance with the cost and terms described below and promise to pay the premium of such insurance coverage. I understand that I may cancel this credit insurance at any time. I represent that, to the best of my knowledge, I am in good health and am insurable.

☐ BB&T Type 1: Complete the following:      ☐ Fidelity Security Insurance Company Flex Plan (Complete separate application)

CREDIT LIFE INSURANCE          Effective Date      Term in Mos.      Initial Ins. Amount      Credit Life Premium

☐ Single      ☐ Level
☐ Joint      ☐ Decreasing      _____      _____      $ _____      $ _____

CREDIT DISABILITY INSURANCE          Monthly Benefit Amount          Credit Disability Premium
Effective Date and Terms in Mos.
Same as Credit Life Insurance Above      $ _____      $ _____

Credit Disability Insurance is subject to a 14-day elimination period and a 60-month maximum benefit period. Only the Borrower or Co-Maker who signs on the first line under "Signature(s) of Insured" is covered by Credit Disability Insurance.

Date of Birth          Signature(s) of Insured          Total Credit Life and Disability Insurance Premium

_____      _____
                          Signature of Primary Insured          $ _____

_____      _____
                          Signature of Secondary Insured

---

(SIGNATURES ON FOLLOWING PAGE)

# BB&T

## NOTE MODIFICATION SIGNATURE PAGE

Borrower: ___HUDSON RIVER PARTNERS LP___

Account Number: ___9560082298___          Note Number: ___00002___

Modification Amount: ___686,333.33___          Modification Date: ___03/19/2003___

IN WITNESS WHEREOF, the undersigned, on the day and year first written above, has caused this instrument to be executed under seal.

### If Borrower is a Corporation:

WITNESS:                                    _____
                                            NAME OF CORPORATION

_____     By: _____ (SEAL)

                                    Title: _____

_____     By: _____ (SEAL)

                                    Title: _____

### If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership or Limited Liability Limited Partnership:

WITNESS:                                    _____
                                            HUDSON RIVER PARTNERS LP
                                            NAME OF PARTNERSHIP, LLC, LLP OR LLLP

_____     By: _____ (SEAL)
                                            GENERAL PARTNER OR MANAGER

_____     By: _____ (SEAL)
                                            GENERAL PARTNER OR MANAGER

                                    By: _____ (SEAL)
                                            GENERAL PARTNER OR MANAGER

### If Borrower is an Individual

WITNESS:

_____     _____ (SEAL)

### Additional Borrowers and Debtors/Grantors/Guarantors:

WITNESS:

_____     _____ (SEAL)

_____     _____ (SEAL)

_____     _____ (SEAL)

_____     _____ (SEAL)

_____     _____ (SEAL)

_____     _____ (SEAL)

HUDSON RIVER PARTNERS LP

Address  700 NEW HAMPSHIRE AVE NW # 415

WASHINGTON,DC 20037-2406

**BB&T**

9560082298
Customer Number

00002
Note Number

### NOTE MODIFICATION AGREEMENT

| $ 700,000.00 | 03/13/2002 | $ 700,000.00 | 04/24/2003 |
|---|---|---|---|
| Original Amount of Note | Original Date | Modification Amount | Modification Date |

This Note Modification Agreement (hereinafter Agreement) is made and entered into this __24th__ day of _____ April, 2003 _____,
by and between  HUDSON RIVER PARTNERS LP _____
maker(s), co-maker(s), endorser(s), or other obligor(s) on the Promissory Note (as defined below), hereinafter also referred to jointly and severally as
Borrower(s); Branch Banking and Trust Company, a North Carolina banking corporation, hereinafter referred to as Bank; and _____

owners other than Borrower(s) (if any) of any property pledged to secure performance of Borrower(s)'s obligations to Bank, hereinafter referred to
jointly and severally as Debtor(s)/Grantor(s).

Witnesseth: Whereas, Borrower(s) has previously executed a Promissory Note payable to Bank, which Promissory Note includes the original
Promissory Note and all renewals, extensions and modifications thereof, collectively "Promissory Note", said Promissory Note being more particularly
identified by description of the above note or Promissory Note above; and Borrower(s) and Bank agree that said Promissory Note be modified only to the limited extent
as is hereinafter set forth; that all other terms, conditions, and covenants of said Promissory Note remain in full force and effect, and that all other
obligations and covenants of Borrower(s), except as herein modified, shall remain in full force and effect, and binding between Borrower(s) and Bank
and Whereas Debtor(s)/Grantor(s), if different from Borrower(s), has agreed to the terms of this modification; NOW THEREFORE, in mutual
consideration of the premises, the sum of Ten Dollars ($10) and other good and valuable consideration, each to the other parties paid , the parties
hereto agree that said Promissory Note is amended as hereinafter described:

[ ]  Borrower shall pay a prepayment penalty as set forth in the Prepayment Penalty Addendum attached hereto.

INTEREST RATE, PRINCIPAL AND INTEREST PAYMENT TERM  MODIFICATIONS (To the extent no change is made, existing terms continue.  Sections not completed
are deleted.)

Interest shall accrue from the date hereof on the unpaid principal balance outstanding from time to time at the:

[ ]  Fixed Rate of _____ % per annum.

[X]  Variable rate of the Bank's Prime Rate plus  2.000  % per  annum to be adjusted  [ ] daily  [ ] monthly beginning on the  [ ] 1st  [ ] 15th
day of _____  [ ] quarterly beginning on the  [ ] 1st  [ ] 15th day of _____  as the
Bank's Prime Rate changes.

[ ]  As of the Modification Date, any fixed, floating, or average maximum rate and fixed minimum rate in effect by virtue of the Promissory Note(s)
are hereby deleted.  If checked here  [ ]  ,the interest rate will not exceed a(n)  [ ] fixed  [ ] average maximum rate of _____ % or a
[ ] floating maximum rate of the greater of _____ % or the Bank's Prime Rate; and the interest rate will not decrease below a fixed
minimum rate of _____ %.  If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank
will be made:  [ ] when the Note is repaid in full by Borrower  [ ] annually beginning on _____ .

[ ] _____

Principal and interest are payable as follows:

[ ]  Principal (plus any accrued interest not otherwise scheduled herein) } is due in full at maturity on  06/23/2003 _____

[X]  Principal plus accrued interest

[ ]  Payable in consecutive _____ installments of  { Principal
{ Principal and interest } commencing on _____
and continuing on the same day of each calendar period thereafter, in _____ equal payments of $_____ , with one final
payment of all remaining principal and accrued interest due on _____

[ ]  ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____
and continuing on  the  same  day  of each month thereafter, with one final  payment of all  remaining principal and  accrued  interest due
on _____ .

[ ]  Accrued interest is payable _____ commencing on _____ and continuing on the same day
of each calendar period thereafter, with one final payment of all remaining interest due on _____

[ ]  Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on
the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date
of this Note. Borrower understands the payment may increase if interest rates increase.

[ ]  Prior to an event of default, Borrower may borrow, repay, and reborrow pursuant to the terms of a Loan Agreement dated _____
between Borrower and Bank.

[ ] _____

[ ]  Borrower(s) hereby authorizes Bank to automatically debit from its demand deposit or savings account(s) with Bank, any payment(s) due under
this Note on date(s) due.

The following scheduled payment(s) is (are) deferred:

[ ]  $_____ principal
[ ]  $_____ interest
[ ]  $_____ principal and interest  } payment(s) due on _____

is (are) hereby deferred.  Payments will resume on _____ according to the schedule contained herein or
to the existing schedule (if no other changes are made herein).

*ACCOUNT# / NOTE#*
9560082298    00002



1373DC (0110)

Page 1 of 4

The Borrower(s) promises to pay Bank, or order, a late fee in the amount of five percent (5%) of the installment past due for ten (10) or more days. Where any installment payment is past due for ten (10) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to nonsufficient funds.

COLLATERAL: ☐ The Promissory Note, as modified, and the performance of the terms of any agreement or instrument relating to, evidencing, or securing the Promissory Note, as modified, shall be additionally secured by collateral hereinafter described, a new security instrument shall be executed by Borrower(s), and/or Debtor(s)/Grantor(s), and all other steps necessary to perfect or record the Bank's lien with priority acceptable to Bank shall be taken.

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

Date: _____ Type of Agreement: _____

From: _____

☐ _____

☐ The collateral hereinafter described shall be and hereby is deleted as security interest for payment of the aforesaid Promissory Note:

_____

OTHER: _____

If the Promissory Note being modified by this Agreement is signed by more than one person or entity, the modified Promissory Note shall be the joint and several obligation of all signers and the property and liability of each and all of them. It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of the Borrower(s) as evidenced by the Promissory Note above described is not extinguished hereby. It is also understood and agreed that except for the modification(s) contained herein said Promissory Note, and any other Loan Documents or Agreements evidencing, securing or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or affect the liability of any co-makers, obligors, endorsers or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to the terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased or supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as any interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in any variable interest rate based on an index such as the Bank's Prime Rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount. Notwithstanding any other provision contained in this agreement, in no event shall the provisions of this paragraph be applicable to any Promissory Note which requires disclosures pursuant to the Consumer Protection Act (Truth-in-Lending Act), 15 USC § 1601, et seq., as implemented by Regulation Z.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan and shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due.

The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Promissory Note(s) as permitted by applicable law.

In the words "Prime Rate", "Bank Prime Rate", "BB&T Prime Rate", "Bank's Prime Rate" or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as its Prime Rate. The Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

Unless otherwise provided herein, it is expressly understood and agreed by and between Borrower(s), Debtor(s)/Grantor(s) and Bank that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper, and equipment) given as security to insure faithful performance by Borrower(s) and any other third party of any and all obligations to Bank, however created, whether now existing or hereafter arising, shall remain as security for the Promissory Note as modified hereby.

It is understood and agreed that if Bank has released collateral herein, it shall not be required or obligated to take any further steps to release said collateral from any lien or security interest unless Bank determines, in its sole discretion, that it may do so without consequence to its secured position and relative priority in other collateral; and unless Borrower(s) bears the reasonable cost of such action.  No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same, or of any other right on any further occasion.  Each of the parties signing this Agreement regardless of the time, order or place of signing waives presentment, demand, protest, and notices of every kind, and assents to any one or more extensions of postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of any other parties or persons primarily or secondarily liable.  Whenever possible the provisions of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.  All rights and obligations arising hereunder shall be governed by and construed in accordance with the laws of the same state which governs the interpretation and enforcement of the Promissory Note.

From and after any event of default under this Agreement, the Promissory Note, or any related deed of trust, security agreement or loan agreement, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the District of Columbia; and further that such rate shall apply after judgement.  In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate until such principal and interest have been paid in full.  Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

---

### CREDIT LIFE AND DISABILITY INSURANCE

Subject to certain underwriting criteria and limitations, INDIVIDUAL BORROWERS  AND ADDITIONAL CO-MAKERS HAVE THE RIGHT TO REQUEST CREDIT LIFE AND DISABILITY INSURANCE PROTECTION  FOR THIS LOAN. One or two Borrowers/Co-makers may be covered by BB&T Credit Life Insurance and one Borrower/Co-maker may be covered by BB&T Credit Disability Insurance. However, the purchase of credit life and credit disability insurance from the Bank is not a condition of obtaining or maintaining this loan.

I, the undersigned, desire the credit insurance with the cost and terms described below and promise to pay the premium of such insurance coverage. I understand that I may cancel this credit insurance at any time. I represent that, to the best of my knowledge, I am in good health and am insurable.

☐ BB&T Type 1: Complete the following:        ☐ Fidelity Security Insurance Company Flex Plan (Complete separate application)

CREDIT LIFE INSURANCE          Effective Date        Term in Mos.        Initial Ins. Amount        Credit Life Premium
☐ Single        ☐ Level
☐ Joint         ☐ Decreasing      _____   _____   $ _____   $ _____

CREDIT DISABILITY INSURANCE                    Monthly Benefit Amount                    Credit Disability Premium
Effective Date and Terms in Mos.
Same as Credit Life Insurance Above      $ _____                    $ _____

Credit Disability Insurance is subject to a 14-day elimination period and a 60-month maximum benefit period. Only the Borrower or Co-Maker who signs on the first line under "Signature(s) of Insured" is covered by Credit Disability Insurance.

Date of Birth              Signature(s) of Insured              Total Credit Life and Disability
                                                                        Insurance Premium

_____    _____
                        Signature of Primary Insured

_____    _____        $ _____
                        Signature of Secondary Insured

---

(SIGNATURES ON FOLLOWING PAGE)

1373DC (0110)

**BB&T**

## NOTE MODIFICATION SIGNATURE PAGE

Borrower: ___HUDSON RIVER PARTNERS LP___

Account Number: ___9560082298___                    Note Number: ___00002___

Modification Amount: ___700,000.00___               Modification Date: _04/24/2003_

Witness the hand and seal of the undersigned. Each of the undersigned adopts as his seal the word or symbol for "seal" appearing beside or near his signature below.

**If Borrower is a Corporation:**

WITNESS/
ATTEST: _Ms. André Gorus_          **HUDSON RIVER PARTNERS LP**
                                    NAME OF CORPORATION

Title: _Business Services Assistant_     By: _____

                                    Title: _President_

( Corporation Seal )                By: _____
(Affix seal or insert name of corporation in seal to adopt as seal of Borrower)

                                    Title: _____

**If Borrower is a Partnership, Limited Liability Company, or Limited Liability Partnership:**

WITNESS:
                                    NAME OF PARTNERSHIP, LLC, OR LLP

_____   By: _____ (SEAL)
                                         GENERAL PARTNER OR MANAGER

_____   By: _____ (SEAL)
                                         GENERAL PARTNER OR MANAGER

_____   By: _____ (SEAL)
                                         GENERAL PARTNER OR MANAGER

**If Borrower is an Individual**

WITNESS:

_____   _____ (SEAL)

**Additional Borrowers and Debtors/Grantors/Guarantors:**

WITNESS:

_____   _____ (SEAL)

_____   _____ (SEAL)

_____   _____ (SEAL)

_____   _____ (SEAL)

_____   _____ (SEAL)

_____   _____ (SEAL)