# EXHIBIT 3

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC
———
(202) 872-0800

**BB&T**

## LOAN AGREEMENT

9560082298
Account Number

This Loan Agreement (the "Agreement") is made this 9th day of March, 2001 by and between BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation ("Bank"), and:

Hudson River Partners LP, a Delaware limited partnership ("Borrower"), having principal offices at 700 New Hampshire Watergate South 415, Washington, DC 20037 whose managing general partner is Hudson River Partners Inc.

Douglas P. Bennett (individually "Guarantor" and collectively the "Guarantors").

The Borrower has applied to Bank for and the Bank has agreed to make, subject to the terms of this Agreement, the following loan(s):

**Line of Credit** ("Line of Credit") in the maximum principal amount not to exceed $500,000.00 at any one time outstanding for the purpose of operating expenses which shall be evidenced by the Borrower's Promissory Note(s) dated on or after the date hereof which shall mature March 9, 2002, when the entire unpaid principal balance then outstanding plus accrued interest thereon shall be paid in full. Prior to maturity or the occurrence of any Event of Default hereunder and subject to any Borrowing Base limitations, the Borrower may borrow, repay, and reborrow hereunder through maturity. Line of Credit shall bear interest at the rate set forth in any such note evidencing all or any portion of the Line of Credit, the terms of which are incorporated herein by reference, and shall be secured by Business Assets, Assignment of Partnership, and the Assignment of the Developmental Fee.

**Section 1 Conditions Precedent**

The Bank shall not be obligated to make any disbursement until all of the following conditions have been satisfied by proper evidence, execution, and/or delivery to the Bank of the following items in addition to this Agreement, all in form and substance satisfactory to the Bank and the Bank's counsel in their sole discretion:

**Note(s):** The Note(s) evidencing the above referenced loans duly executed by the Borrower.
**Security Agreement:** A Security Agreement in which Borrower shall grant to Bank a first and prior security interest in the Borrower's or other owner's specified personal property. (If Bank will be a junior lienholder on any personal property, Borrower must fully disclose to Bank any and all prior security interests, and Bank must specifically approve its junior lien position.)
**UCC Financing Statements:** Acknowledged copies of UCC Financing Statements (UCC-1) duly filed in all jurisdictions necessary, or in the opinion of the Bank desirable, to perfect the security interests granted in the Security Agreement, and certified copies of Requests For Information (UCC-11) identifying all previous financing statements on record for the Borrower from all jurisdictions indicating that no security interest has previously been granted in any of the collateral described in the Security Agreement, unless prior approval has been given by the Bank.
**Guaranty:** Guaranty Agreement(s) duly executed by the Guarantor(s). In addition, the Guarantor(s) covenants and agrees to provide the Bank with appropriate financial information including 1040 federal tax returns, a balance sheet, and income information satisfactory to the Bank upon request, but not less often than annually.
**Partnership Agreement:** A copy of the Borrower's Partnership Agreement.
**Declaration of Partnership:** A Declaration of Partnership from the partners of the Partnership authorizing the execution, delivery, and performance of the Loan Documents on or in a form provided by or acceptable to Bank.
**Corporate Resolution:** A Corporate Resolution duly adopted by the Board of Directors of the Borrower Authorizing the execution, delivery, and performance of the Loan Documents on or in a form provided by or acceptable to the Bank.
**Additional Documents:** Receipt by the Bank of other approvals, opinions, or documents as the Bank may reasonably request.
**Assignment of Partnership Interest:** Assignment of Partnership Interest duly executed by the Partner that is pledging his interest.

**Section 2 Representations and Warranties**

The Borrower and Guarantor(s) represent and warrant to Bank that:

2.01. **Financial Statements.** The balance sheet of the Borrower and its subsidiaries and the related Statements of Income and Retained Earnings of the Borrower and its subsidiaries, the accompanying footnotes together with the accountant's opinion thereon, and all other financial information previously furnished to the Bank, are true and correct and fairly reflect the financial condition of the Borrower and its subsidiaries as of the dates thereof, including all contingent liabilities of every type, and the financial condition of the Borrower and its subsidiaries as stated therein has not changed materially and adversely since the date thereof. Each Guarantor also makes the same representations and warranties as the Borrower concerning its financial statements and condition.

2.02. **Capacity and Standing.** If the Borrower and/or any Guarantor is a corporation, limited liability company, or limited liability partnership, each warrants and represents that it is duly organized and validly existing under the laws of its respective state of incorporation or organization, it and its subsidiaries are duly qualified and in good standing in every other state in which the nature of their business shall require such qualification, and are each duly authorized by their board of directors, managers or partners respectively to enter into and perform the obligations under the Loan Documents.

2.03. **No Violation of Other Agreements.** The execution of any of the Loan Documents, and the performance by the Borrower, the Pledgor or the Guarantors thereunder will not violate any provision of its articles of incorporation or by-laws, articles of organization or operating agreement, or agreement of partnership or limited partnership, as applicable or of any law, other agreement, indenture, note, or other instrument binding upon the Borrower or Guarantor, or give cause for the acceleration of any of the respective obligations of the Borrower or Guarantor.

2.04. **Authority.** All authority from and approval by any federal, state, or local governmental body, commission, or agency, necessary to the making, validity, or enforceability of this Agreement or the other Loan Documents has been obtained.

2.05. **Asset Ownership.** The Borrower and each Guarantors have good and marketable title to all of the properties and assets reflected on the balance sheets and financial statements furnished to the Bank, and all such properties and assets are free and clear of mortgages, deeds of trust, pledges, liens, and all other encumbrances except as otherwise disclosed by such financial statements.

2.06. **Discharge of Liens and Taxes.** The Borrower, its subsidiaries, and each Guarantors have filed, paid, and/or discharged all taxes or other claims which may become a lien on any of their respective properties or assets, excepting to the extent that such items are being appropriately contested in good faith and for which an adequate reserve for the payment thereof is being maintained.

2.07. **Regulation U.** None of the proceeds of the loan(s) made pursuant to this Agreement shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of any of the provisions of Regulation U of the Board of Governors of the Federal Reserve System.

2.08. **ERISA.** Each employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), maintained by the Borrower or by any subsidiary of the Borrower or Guarantor(s) meets, as of the date hereof, the minimum funding standards of Section 302 of ERISA, all applicable requirements of ERISA and of the Internal Revenue Code of 1986, as amended, and no "Reportable Event" nor "Prohibited Transaction" (as defined by ERISA) has occurred with respect to any such plan.

2.09. **Litigation.** There is no pending or threatened action or proceeding against or affecting the Borrower, any of its subsidiaries, or the Guarantor(s) before any court, commission, governmental agency, whether State or Federal, or arbitration which may materially adversely affect

**BB&T**

## LOAN AGREEMENT

**2.09. Litigation.** There is no pending or threatened action or proceeding against or affecting the Borrower, any of its subsidiaries, or the Guarantor(s) before any court, commission, governmental agency, whether State or Federal, or arbitration which may materially adversely affect the financial condition, operations, properties, or business of the Borrower, any such subsidiary, or the Guarantor(s), or the ability of the Borrower or the Guarantor(s) to perform their obligations under the Loan Documents.

**2.10. Binding and Enforceable.** The Loan Documents, when executed, shall constitute valid and binding obligations of the Borrower and Guarantors respectively and are enforceable in accordance with their terms, except as may be limited by bankruptcy, insolvency, moratorium, or similar laws affecting creditors' rights generally.

### Section 3 Affirmative Covenants

The Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations under the Loan Documents, it will:

**3.01. Maintain Existence.** Preserve and maintain its existence and good standing in the state of its organization, and qualify and remain qualified as a foreign corporation, limited partnership, LLC, or LLP in each jurisdiction in which such qualification is required.

**3.02. Maintain Records.** Keep adequate records and books of account, in which complete entries will be made in accordance with generally accepted accounting principles consistently applied, reflecting all financial transactions of the Borrower.

**3.03. Maintain Properties.** Maintain, keep, and preserve all of its properties (tangible and intangible) necessary or useful in the conduct of its business in good working order and condition, ordinary wear and tear excepted.

**3.04. Conduct of Business.** Continue to engage in an efficient, prudent, and economical manner in a business of the same general type as now conducted.

**3.05. Maintain Insurance.** Maintain insurance with financially sound and reputable insurance companies or associations in such amounts and covering such risks as are usually carried by companies engaged in the same or a similar business, and business interruption insurance if required by Bank, which insurance may provide for reasonable deductible. The Bank shall be named as loss payee (Long Form) on all policies which apply to the Bank's collateral, and the Borrower shall deliver certificates of insurance at closing evidencing same. All such insurance policies shall provide, and the certificates shall state, that no policy will be terminated without 20 days prior written notice to Bank.

**3.06. Comply With Laws.** Comply in all respects with all applicable laws, rules, regulations, and orders including, without limitation, paying before the delinquency of all taxes, assessments, and governmental charges imposed upon it or upon its property, and all Environmental Laws.

**3.07. Right of Inspection.** Permit the officers and authorized agents of the Bank, at any reasonable time in the Bank's sole discretion, to examine and make copies of the records and books of account of, to visit the properties of the Borrower, and to discuss such matters with any officers, directors, and the Borrower's independent accountant as the Bank deems necessary.

**3.08. Reporting Requirements.** Furnish to the Bank:

**Annual Financial Statements:** As soon as available and not more than ninety (90) days after the end of each fiscal year, balance sheets, statements of income, and retained earnings for the period ended and a statement of changes in the financial position, all in reasonable detail, and all prepared in accordance with GAAP consistently applied. The financial statements must be of the following quality or better Audited.

**Notice of Litigation:** Promptly after the receipt by the Borrower of notice or complaint of any action, suit, and proceeding before any court or governmental agency of any type which, if determined adversely, could have a material adverse effect on the financial condition, properties, or operations of the Borrower.

**Tax Returns:** As soon as available each year, complete copies (including all schedules) of all state and federal tax returns filed by Borrower.

**Other Information:** Such other information as the Bank may from time to time reasonably request.

**3.09. Deposit Accounts.** Maintain substantially all of its demand deposit/operating accounts with the Bank.

### Section 4 Financial Covenants

The Borrower covenants and agrees that from the date hereof until payment in full of all indebtedness and the performance of all obligations under the Loan Documents, the Borrower shall at all times maintain the following financial covenants and ratios all in accordance with GAAP unless otherwise specified:
Not Applicable

### Section 5 Negative Covenants

The Borrower covenants and agrees that from the date hereof and until payment in full of all indebtedness and performance of all obligations under the Loan Documents, the Borrower shall not, without the prior written consent of the Bank:

**5.01. Liens.** Create, incur, assume, or suffer to exist any lien upon or with respect to any of its properties, or the properties of any pledgor, now owned or hereafter acquired, except:
  (a) Liens and security interests in favor of the Bank;
  (b) Liens for taxes not yet due and payable or otherwise being contested in good faith and for which appropriate reserves are maintained;
  (c) Other liens imposed by law not yet due and payable, or otherwise being contested in good faith and for which appropriate reserves are maintained;
  (d) Purchase Money Liens on any property hereafter acquired, provided that such lien shall attach only to the property acquired.

**5.02. Debt.** Create, incur, assume, or suffer to exist any debt, except:
  (a) Debt to the Bank;
  (b) Debt presently outstanding and shown on the most recent financial statements submitted to the Bank;
  (c) Accounts payable to trade creditors incurred in the ordinary course of business;
  (d) Debt secured by purchase money liens as outlined above in Section 5.01 (e);

**5.03. Mergers.** Merge or consolidate with or sell, assign, lease, or otherwise dispose of all or substantially all of its assets (other than in the ordinary course of business) to any Person, or acquire all or substantially all of the assets or the business of any Person.

**5.05. Leases.** Create, incur, assume, or suffer to exist any leases, except:
  (a) Leases presently outstanding and showing on the most recent financial statement submitted to the Bank;

**5.06. Guaranties.** Assume, guarantee, endorse, or otherwise be or become directly or contingently liable for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

**5.07. Sale of Assets.** Sell, lease, or otherwise dispose of any of its assets or properties except in the ordinary and usual course of its business.

**5.11. Transfer of Ownership.** If Borrower is a corporation, transfer or sell more than 10% of the total number of the issued and outstanding shares of stock in Borrower prior to the maturity of the Note(s).

### Section 6 Hazardous Materials and Environmental Compliance

**6.01. Investigation.** Borrower hereby certifies that it has exercised due diligence to ascertain whether its real property, including without limitation the Mortgaged Property, is or has been affected by the presence of asbestos, oil, petroleum or other hydrocarbons, urea formaldehyde, PCBs, hazardous or nuclear waste, toxic chemicals and substances, or other hazardous materials (collectively, "Hazardous Materials"), as defined in applicable Environmental Laws. Borrower represents and warrants that there are no such Hazardous Materials contaminating its real

**BB&T**

## LOAN AGREEMENT

property, nor have any such materials been released on or stored on or improperly disposed of on its real property during its ownership, occupancy or operation thereof. Borrower hereby agrees that it shall not knowingly permit any release, storage or contamination as long as any indebtedness or obligations to Bank under the Loan Documents remains unpaid or unfulfilled. In addition, Borrower does not have or use any underground storage tanks on its property which are not registered with the appropriate Federal and/or State agencies and which are not properly equipped and maintained in accordance with all Environmental Laws. If requested by Bank, Borrower shall provide Bank with all necessary and reasonable assistance required for purposes of determining the existence of Hazardous Materials on the Mortgaged Property, including allowing Bank access to the Mortgaged Property, and access to Borrower's employees having knowledge of, and to files and records within Borrower's control relating to the existence, storage, or release of Hazardous Materials on the Mortgaged Property.

6.02. **Compliance.** Borrower agrees to comply with all applicable Environmental Laws, including, without limitation, all those relating to Hazardous Materials. Borrower further agrees to provide Bank, and all appropriate Federal and State authorities, with immediate notice in writing of any release of Hazardous Materials on the Mortgaged Property and to pursue diligently to completion all appropriate and/or required remedial action in the event of such release.

6.03. **Remedial Action.** Bank shall have the right, but not the obligation, to undertake all or any part of such remedial action in the event of a release of Hazardous Materials on the Mortgaged Property and to add any expenditures so made to the principal indebtedness secured by the Deed(s) of Trust. Borrower agrees to indemnify and hold Bank harmless from any and all loss or liability arising out of any violation of the representations, covenants, and obligations contained in this Section 6, or resulting from the recording of the Deed(s) of Trust.

**Section 7 Events of Default**

The following shall be Events of Default by Borrower or any Guarantor:

7.01. The failure to make prompt payment of any installment of principal or interest on the Note(s) when due or payable

7.02. Any representation or warranty made in the Loan Documents which shall prove to be false or misleading in any material respect.

7.03. Any report, certificate, financial statement, or other document furnished prior to the execution of or pursuant to the terms of this Agreement shall prove to be false or misleading in any material respect.

7.04. The Borrower or any Guarantor shall default on the performance of any other obligation of indebtedness when due or in the performance of any obligation incurred in connection with money borrowed.

7.05. The breach of any covenant, condition, or agreement made by the Borrower or any Guarantor under the Loan Documents.

7.06. If a custodian shall be appointed for or take possession of any or all of the assets of the Borrower or any Guarantor, or should the Borrower or any Guarantor either voluntarily or involuntarily become subject to any insolvency proceeding, any proceeding to dissolve the Borrower or any Guarantor, any proceeding to have a receiver appointed, or should the Borrower or any Guarantor make an assignment for the benefit of creditors, or should there be an attachment, execution, or other judicial seizure of all or any portion of the Borrower's or any Guarantor's assets, including an action or proceeding to seize any funds on deposit with the Bank, and such seizure is not discharged within 30 days.

7.07. Final judgment for the payment of money shall be rendered against the Borrower or any Guarantor which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon be effectively stayed.

7.08. Upon the death of a Borrower who is an individual, or upon the dissolution or termination of the existence of either the Borrower or any Guarantor.

7.09. The Borrower or any Guarantor shall become a Debtor (as such term is defined in the U.S. Bankruptcy Code), whether voluntarily or involuntarily.

7.10. Should the Bank in good faith deem itself, its liens and security interests, if any, or any debt thereunder unsafe or insecure, or should the Bank believe in good faith that the prospect of payment of any debt or other performance by the Borrower or any Guarantor is impaired.

7.11. Should any lien or security interest granted to Bank to secure payment of the Note(s) terminate, fail for any reason to have the priority believed by Bank on the date granted, or become unperfected or invalid for any reason.

7.12. If any Guaranty given in connection with the Loan is terminated by, or upon the death of, any Guarantor.

7.13. Should the Borrower, any Guarantor or any Pledgor contest the validity, legality or enforceability of any Loan Document to which it is a party.

**Section 8 Remedies Upon Default**

Upon the occurrence of any of the above listed Events of Default, the Bank may at any time thereafter, at its option, take any or all of the following actions, at the same or at different times:

8.01. Declare the balance of the Note(s) to be immediately due and payable, both as to principal and interest, without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived by Borrower, each Guarantor, and Pledgor, such balance shall accrue interest at the Default Rate;

8.02. Require the Borrower or Guarantor(s) to pledge additional collateral to the Bank from the Borrower's or Guarantor's assets and properties, the acceptability and sufficiency of such collateral to be determined in the Bank's sole discretion;

8.03. Take immediate possession of and foreclose upon any or all collateral which may be granted to the Bank as security for the indebtedness and obligations of Borrower or any Guarantor under the Loan Documents;

8.04. Exercise other rights and remedies as the Bank may be provided in the Loan Documents, as a secured party under the District of Columbia Uniform Commercial Code, and as provided by law;

8.05. Any obligation of the Bank to advance funds under the Note(s) and all other obligations, if any, of the Bank under the Loan Documents shall immediately cease and terminate unless and until Bank shall reinstate in writing.

**Section 9 Miscellaneous Provisions**

9.01. **Definitions.**

"**Default Rate**" shall mean a rate of interest equal to Bank's Prime Rate plus five percent (5%) per annum (not to exceed the legal maximum rate) from and after the date of an Event of Default hereunder which shall apply, in the Bank's sole discretion, to all sums owing, including principal and interest, on such date.

"**Environmental Laws**" shall mean all federal and state laws and regulations which affect or may affect the Mortgaged Property, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. Sections 9601 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. Sections 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. Sections 1251 et seq.), the Clean Air Act (42 U.S.C. Section 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. Section 2601 et seq.), as such laws or regulations have been amended or may be amended.

"**Loan Documents**" shall mean this Agreement, the Note(s), the Deed(s) of Trust, the Security Agreement(s), Assignment(s) of Leases and Rents, all UCC-1 Financing Statements, the Guaranty Agreement(s), and all other documents, certificates, and instruments executed in connection therewith, and all renewals, extensions, modifications, substitutions, and replacements thereto and therefore.

"**Person**" shall mean an individual, partnership, corporation, trust, unincorporated organization, limited liability company, limited liability partnership, association, joint venture, or a government agency or political subdivision thereof.

"**GAAP**" shall mean generally accepted accounting principles as established by the Financial Accounting Standards Board or the American Institute of Certified Public Accountants, as amended and supplemented from time to time.

# BB&T

## LOAN AGREEMENT

"**Prime Rate**" shall mean the rate of interest per annum announced by the Bank from time to time and adopted as its Prime Rate, which is one of several rate indexes employed by the Bank when extending credit, and may not necessarily be the Bank's lowest lending rate.

9.02. **Non-impairment.** If any one or more provisions contained in the Loan Documents shall be held invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained therein shall not in any way be affected or impaired thereby and shall otherwise remain in full force and effect.

9.03. **Applicable Law.** The Loan Documents shall be construed in accordance with and governed by the laws of the District of Columbia.

9.04. **Waiver.** Neither the failure or any delay on the part of the Bank in exercising any right, power or privilege granted in the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any other right, power, or privilege which may be provided by law.

9.05. **Modification.** No modification, amendment, or waiver of any provision of any of the Loan Documents shall be effective unless in writing and signed by the Borrower and Bank.

9.06. **Payment Amount Adjustment.** In the event that any Loan(s) referenced herein has a variable (floating) interest rate and the interest rate increases, Bank, at its sole discretion, may at any time adjust the Borrower's payment amount(s) to prevent the amount of interest accrued in a given period to exceed the periodic payment amount or to cause the Loan(s) to be repaid within the same period of time as originally agreed upon.

9.07. **Stamps and Fees.** The Borrower shall pay all federal or state stamps, taxes, or other fees or charges, if any are payable or are determined to be payable by reason of the execution, delivery, or issuance of the Loan Documents or any security granted to the Bank; and the Borrower and Guarantor agree to indemnify and hold harmless the Bank against any and all liability in respect thereof.

9.08. **Attorneys Fees.** In the event the Borrower or Guarantor shall default in any of its obligations hereunder and the Bank believes it necessary to employ an attorney to assist in the enforcement or collection of the indebtedness of the Borrower to the Bank, to enforce the terms and provisions of the Loan Documents to modify the Loan Documents, or in the event the Bank voluntarily or otherwise should become a party to any suit or legal proceeding (including a proceeding conducted under the Bankruptcy Code), the Borrower and Guarantors agree to pay the reasonable attorney's fees of the Bank and all related costs of collection or enforcement that may be incurred by the Bank. The Borrower and Guarantor shall be liable for such attorney's fees and costs whether or not any suit or proceeding commences.

9.09. **Bank Making Required Payments.** In the event Borrower shall fail to maintain insurance, pay taxes or assessments, costs and expenses which Borrower is, under any of the terms hereof or of any Loan Documents, required to pay, or fail to keep any of the properties and assets constituting collateral free from new security interests, liens, or encumbrances, except as permitted herein, Bank may at its election make expenditures for any or all such purposes and the amounts expended together with interest thereon at the Default Rate, shall become immediately due and payable to Bank, and shall have benefit of and be secured by the collateral The Bank shall be under no duty or obligation whatever with respect to any of the foregoing expenditures.

9.10. **Right of Offset.** Any indebtedness owing from Bank to Borrower may be set off and applied by Bank on any indebtedness or liability of Borrower to Bank, at any time and from time to time after maturity, whether by acceleration or otherwise, and without demand or notice to Borrower. Bank may sell participations in or make assignments of any loans made under this Agreement, and Borrower agrees that any such participant or assignee shall have the same right of setoff as is granted to the Bank herein.

9.11. **Modification and Renewal Fees.** Bank may, at its option, charge any fees for modification, renewal, extension, or amendment of any terms of the Note(s) permitted by applicable law and the Loan Documents.

9.12. **Conflicting Provisions.** If provisions of this Agreement shall conflict with any terms or provisions of the Note(s), the provisions of the Note(s) shall take priority over any provisions in the Agreement.

9.13. **Notices.** Any notice permitted or required by the provisions of this Agreement shall be deemed to have been given when delivered in writing to the City Executive or any Vice President of the Bank at its offices in the District of Columbia, and to the Managing General Partner of the Borrower at its offices at 700 New Hampshire Avenue, Watergate South No.415, Washington, DC 20037 when sent by certified mail and return receipt requested.

9.14. **Consent to Jurisdiction.** Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may be instituted in the Superior Court in District of Columbia, or the United States District Court for the District of District of Columbia, or in such other appropriate court and venue as Bank may choose in its sole discretion. Borrower consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Borrower may now or hereafter have in any such legal action or proceedings.

9.15. **Counterparts.** This Agreement may be executed by one or more parties on any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

9.16. **Entire Agreement.** The Loan Documents embody the entire agreement between Borrower and Bank with respect to the Loans, and there are no oral or parol agreements existing between Bank and Borrower with respect to the Loans which are not expressly set forth in the Loan Documents.

[SIGNATURES ON FOLLOWING PAGE]

# BB&T

## LOAN AGREEMENT

### SIGNATURE PAGE

IN WITNESS WHEREOF, the Borrower and Guarantor have caused this Agreement to be duly executed all as of the date first above written.

**Borrower is a Partnership, Limited Liability Company, or Limited Liability Partnership:**

WITNESS: _[signature]_

Hudson River Partners LP (SEAL)
Name of Partnership, LLC or LLP

By: _[signature]_ (SEAL)
Hudson River Partners Inc. Douglas Bennett, President

By: _____ (SEAL)
General Partner or Manager

By: _____ (SEAL)
General Partner or Manager

**Additional Co-makers or Guarantors:**

WITNESS: _[signature]_

_[signature]_ (SEAL)
Douglas Bennett

_____ (SEAL)
_____ (SEAL)
_____ (SEAL)

BRANCH BANKING AND TRUST COMPANY

Witness/Attest: _[signature]_

By: _[signature]_
Gregory Beg
Title: Assistant Vice President

(Corporate Seal)

# EXHIBIT 4

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC
———
(202) 872-0800



# GUARANTY AGREEMENT

BRANCH BANKING AND TRUST COMPANY
WASHINGTON

MARCH 9, 2001

Dear Sirs:

As an inducement to Branch Banking and Trust Company ("Bank") to extend credit to and to otherwise deal with _____ ("Borrower") HUDSON RIVER PARTNERS LP and in consideration thereof, the undersigned (and each of the undersigned jointly and severally if more than one) hereby absolutely and unconditionally guarantees to Bank and its successors and assigns, unless expressly limited below, the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary (whether by way of endorsement or otherwise), of Borrower, at any time, now or hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof. The obligation of the undersigned is a guarantee of payment and not of collection.

The undersigned is Bank's debtor for all indebtedness, obligations and liabilities for which this Guaranty is made, and Bank shall also at all times have a lien on and security interest in all stocks, bonds and other securities of the undersigned at any time in Bank's possession and the same shall at Bank's option be held, administered and disposed of as collateral to any such indebtedness, obligation or liability of the Borrower, and Bank shall also at all times have the right of set-off against any deposit account of the undersigned with Bank in the same manner and to the same extent that the right of set-off may exist against the Borrower.

The undersigned agrees that any such notes, drafts, debts, obligations and liabilities of borrower may be accepted or created by or with Bank at any time and from time to time without notice to the undersigned, and the undersigned hereby expressly waives presentment, demand, protest, and notice of dishonor of any such notes, drafts, debts, obligations and liabilities or other evidences of any such indebtedness, obligation or liability.

Bank may receive and accept from time to time any securities or other property as a collateral to any such notes, drafts, debts, obligations and liabilities, and may surrender, compromise, exchange and release absolutely the same or any part thereof at any time without notice to the undersigned and without in any manner affecting the obligation and liability of the undersigned hereby created. The undersigned agrees that Bank shall have no obligation to protect, perfect, secure or insure any security interests, liens or encumbrances now or hereafter held for the indebtedness, obligations and liabilities for which this Guaranty is made.

This obligation and liability on the part of the undersigned shall be a primary, and not a secondary, obligation and liability, payable immediately upon demand without recourse first having been had by Bank against the Borrower or any other guarantor, person, firm or corporation, and without first resorting to any property held by Bank as collateral security; and the undersigned hereby waives the benefits of all provisions of law, for stay or delay of execution or sale of property or other satisfaction of judgment against the undersigned on account of obligation and liability hereunder until judgment be obtained therefor against the Borrower and execution thereon returned unsatisfied, or until it is shown that the Borrower has no property available for the satisfaction of the indebtedness, obligation or liability guaranteed hereby, or until any other proceedings can be had; and the undersigned hereby agrees to indemnify the Bank for all costs of collection, including but not limited to the costs of repossession, foreclosure, reasonable attorneys' fees, and court costs incurred by the Bank in the event that the Bank should first be required by the undersigned to resort to any property held by the Bank or in which the Bank has a lien or security interest or to obtain execution or other satisfaction of a judgment against the Borrower on account of Borrower's obligation and liability for its indebtedness guaranteed hereby; and the undersigned further agrees that the undersigned is responsible for any obligation or debt, or portion thereof, of the Borrower to the Bank which has been paid by the Borrower to the Bank and which the Bank is subsequently required to return to the Borrower or a trustee for the Borrower in any bankruptcy or insolvency proceeding; and the undersigned further agrees that none of the undersigned shall have any right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to Bank unless and until all of the debts and obligations of the Borrower to Bank have been paid in full. The undersigned hereby waives, to the extent avoidable under any provision of the Bankruptcy Code, any right arising upon payment by the undersigned of any obligation under this Guaranty to assert a claim against the bankruptcy estate of the Borrower.

Check applicable box:
[X] This Guaranty is unlimited and applies to all indebtedness of Borrower, whether now existing or hereafter arising.

[ ] This Guaranty applies to all indebtedness of Borrower evidenced by its promissory note number _____ dated _____ (including all extensions, renewals, and modifications thereof) in the principal amount of $_____.

[ ] This Guaranty is limited to an amount of $_____ plus accrued interest, late fees, costs of collection (including attorneys' fees) and all other obligations and indebtedness which may accrue or be incurred with respect to the Borrower's indebtedness and obligations to Bank.

To secure the payment of all obligations of the undersigned hereunder, the undersigned hereby grants a security interest and lien in the following goods and property owned by the undersigned: _____ ("Collateral").

The undersigned hereby agrees to execute and deliver to Bank any security agreement, deed of trust, mortgage, UCC financing statement, or other document required by the Bank to protect or perfect its security interest or lien in the Collateral. This document shall constitute a security agreement under the Uniform Commercial Code of the District of Columbia ("Code"), and in addition to having all other legal rights and remedies, the Bank shall have all rights and remedies of a secured party under the Code.

ACCOUNT# / NOTE#
9560082298



1457DC (9901)

Initials: DPB

Page 1 of 2

This agreement shall inure to the benefit of Bank, its successors and assigns, and the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, and shall remain in force until a written notice revoking it has been received by Bank; but such revocation shall not release the undersigned from liability to Bank, its successors and assigns, or the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, for any indebtedness, obligation or liability of the Borrower which is hereby guaranteed and then in existence or from any renewals, extensions or modifications thereof in whole or in part, whether such renewals, extensions or modifications are made before or after such revocation, with or without notice to the undersigned. The undersigned waives presentment, demand, protest and notices of every kind and assents to any one or more extensions, modifications, renewals or postponements of the time or amount of payment or any other indulgences given to Borrower. The undersigned shall be responsible for and shall reimburse the Bank for all costs and expenses (including reasonable attorneys' fees) incurred by the Bank in connection with the enforcement of this Guaranty or the protection or preservation of any right or claim of the Bank in connection herewith, including without limitation costs and expenses incurred by the Bank in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby.

If the Borrower is a corporation, this instrument covers all indebtedness, obligations and liabilities to Bank purporting to be made or undertaken on behalf of such corporation by any such officer or agent of said corporation without regard to the actual authority of such officer or agent. The term "corporation" shall include associations of all kinds and all purported corporations, whether correctly and legally chartered and organized.

The undersigned covenants, warrants, and represents to the Bank that: (i) this guaranty is enforceable against the undersigned in accordance with its terms; (ii) the execution and delivery of this Guaranty does not violate or constitute a breach of any agreement to which the undersigned is a party; (iii) that there is no litigation, claim, action or proceeding pending or, to the best knowledge of the undersigned, threatened against the undersigned which would materially adversely affect the financial condition of the undersigned or his ability to fulfill his obligations hereunder; and (iv) that the undersigned has knowledge of the Borrower's financial condition and affairs.

This Guaranty is made in and shall be construed in accordance with the laws and judicial decisions of the District of Columbia. The undersigned agrees that any dispute arising out of this Guaranty shall be adjudicated in any District of Columbia court or the U.S. District Court for the District of Columbia and in no other forum. For that purpose, the undersigned hereby submits to the jurisdiction of the state and/or federal courts of the District of Columbia. The undersigned waives any defense that venue is not proper for any action brought in any federal or state court in the District of Columbia.

Witness the signature and seal of each of the undersigned.

WITNESS _____  _____ (SEAL)
                                            Signature of DOUGLAS P BENNETT

                                            _____ (SEAL)

Address of Guarantor(s):    2884 WOODLAND DR NW

                            WASHINGTON, DC  20008

District of Columbia:

I, _Deborah L. Tremble_, Notary Public of _Washington, DC_ County, do hereby certify that _Douglas P. Bennett_ personally appeared before me this day and acknowledged the due execution of the foregoing instrument in writing.

Witness my hand and seal, this _9th_ day of _March_, 2001.

My Commission Expires: _June 14, 2004_

_Deborah L. Tremble_
NOTARY PUBLIC

1457DC (9901)

Page 2 of 2

# BB&T
## GUARANTY AGREEMENT

BRANCH BANKING AND TRUST COMPANY  
WASHINGTON, DC

10/21/2003

Dear Sirs:

As an inducement to Branch Banking and Trust Company ("Bank") to extend credit to and to otherwise deal with _____ HUDSON RIVER PARTNERS LP _____ ("Borrower"), and in consideration thereof, the undersigned (and each of the undersigned jointly and severally if more than one) hereby absolutely and unconditionally guarantees to Bank and its successors and assigns, unless expressly limited beow, the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary (whether by way of endorsement or otherwise), of Borrower, at any time, now or hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof. The obligation of the undersigned is a guarantee of payment and not of collection.

The undersigned is Bank's debtor for all indebtedness, obligations and liabilities for which this Guaranty is made, and Bank shall also at all times have a lien on and security interest in all stocks, bonds and other securities of the undersigned at any time in Bank's possession and the same shall at Bank's option be held, administered and disposed of as collateral to any such indebtedness, obligation or liability of the Borrower, and Bank shall also at all times have the right of set-off against any deposit account of the undersigned with Bank in the same manner and to the same extent that the right of set-off may exist against the Borrower.

The undersigned agrees that any such notes, drafts, debts, obligations and liabilities of borrower may be accepted or created by or with Bank at any time and from time to time without notice to the undersigned, and the undersigned hereby expressly waives presentment, demand, protest, and notice of dishonor of any such notes, drafts, debts, obligations and liabilities or other evidences of any such indebtedness, obligation or liability.

Bank may receive and accept from time to time any securities or other property as a collateral to any such notes, drafts, debts, obligations and liabilities, and may surrender, compromise, exchange and release absolutely the same or any part thereof at any time without notice to the undersigned and without in any manner affecting the obligation and liability of the undersigned hereby created. The undersigned agrees that Bank shall have no obligation to protect, perfect, secure or insure any security interests, liens or encumbrances now or hereafter held for the indebtedness, obligations and liabilities for which this Guaranty is made.

This obligation and liability on the part of the undersigned shall be a primary, and not a secondary, obligation and liability, payable immediately upon demand without recourse first having been had by Bank against the Borrower or any other guarantor, person, firm or corporation, and without first resorting to any property held by Bank as collateral security; and the undersigned hereby waives the benefits of all provisions of law, for stay or delay of execution or sale of property or other satisfaction of judgment against the undersigned on account of obligation and liability hereunder until judgment be obtained therefor against the Borrower and execution thereon returned unsatisfied, or until it is shown that the Borrower has no property available for the satisfaction of the indebtedness, obligation or liability guaranteed hereby, or until any other proceedings can be had; and the undersigned hereby agrees to indemnify the Bank for all costs of collection, including but not limited to the costs of repossession, foreclosure, reasonable attorneys' fees, and court costs incurred by the Bank in the event that the Bank should first be required by the undersigned to resort to any property held by the Bank or in which the Bank has a lien or security interest or to obtain execution or other satisfaction of a judgment against the Borrower on account of Borrower's obligation and liability for its indebtedness guaranteed hereby; and the undersigned further agrees that the undersigned is responsible for any obligation or debt, or portion thereof, of the Borrower to the Bank which has been paid by the Borrower to the Bank and which the Bank is subsequently required to return to the Borrower or a trustee for the Borrower in any bankruptcy or insolvency proceeding; and the undersigned further agrees that none of the undersigned shall have any right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to Bank unless and until all of the debts and obligations of the Borrower to Bank have been paid in full. The undersigned hereby waives, to the extent avoidable under any provision of the Bankruptcy Code, any right arising upon payment by the undersigned of any obligation under this Guaranty to assert a claim against the bankruptcy estate of the Borrower.

Check applicable box:

☒ This Guaranty is unlimited and applies to all indebtedness of Borrower, whether now existing or hereafter arising.

☐ This Guaranty applies to all indebtedness of Borrower evidenced by its promissory note number _____ dated _____ (including all extensions, renewals, and modifications thereof) in the principal amount of $_____.

☐ This Guaranty is limited to an amount of $_____ plus accrued interest, late fees, costs of collection (including attorneys' fees) and all other obligations and indebtedness which may accrue or be incurred with respect to the Borrower's indebtedness and obligations to Bank.

To secure the payment of all obligations of the undersigned hereunder, the undersigned hereby grants a security interest and lien in the following goods and property owned by the undersigned: _____

_____
_____
_____
_____
_____
_____
_____ ("Collateral").

The undersigned hereby agrees to execute and deliver to Bank any security agreement, deed of trust, mortgage, UCC financing statement, or other document required by the Bank to protect or perfect its security interest or lien in the Collateral. This document shall constitute a security agreement under the Uniform Commercial Code of the District of Columbia ("Code"), and in addition to having all other legal rights and remedies, the Bank shall have all rights and remedies of a secured party under the Code.

*ACCOUNT# / NOTE#*  
9560082298    00002



Initials: DRB

Page 1 of 2

This agreement shall inure to the benefit of Bank, its successors and assigns, and the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, and shall remain in force until a written notice revoking it has been received by Bank; but such revocation shall not release the undersigned from liability to Bank, its successors and assigns, or the owners and holders of any of the indebtedness, obligations and liabilities hereby guaranteed, for any indebtedness, obligation or liability of the Borrower which is hereby guaranteed and then in existence or from any renewals, extensions or modifications thereof in whole or in part, whether such renewals, extensions or modifications are made before or after such revocation, with or without notice to the undersigned. The undersigned waives presentment, demand, protest and notices of every kind and assents to any one or more extensions, modifications, renewals or postponements of the time or amount of payment or any other indulgences given to Borrower. The undersigned shall be responsible for and shall reimburse the Bank for all costs and expenses (including reasonable attorneys' fees) incurred by the Bank in connection with the enforcement of this Guaranty or the protection or preservation of any right or claim of the Bank in connection herewith, including without limitation costs and expenses incurred by the Bank in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby.

If the Borrower is a corporation, this instrument covers all indebtedness, obligations and liabilities to Bank purporting to be made or undertaken on behalf of such corporation by any such officer or agent of said corporation without regard to the actual authority of such officer or agent. The term "corporation" shall include associations of all kinds and all purported corporations, whether correctly and legally chartered and organized.

The undersigned covenants, warrants, and represents to the Bank that: (i) this guaranty is enforceable against the undersigned in accordance with its terms; (ii) the execution and delivery of this Guaranty does not violate or constitute a breach of any agreement to which the undersigned is a party; (iii) that there is no litigation, claim, action or proceeding pending or, to the best knowledge of the undersigned, threatened against the undersigned which would materially adversely affect the financial condition of the undersigned or his ability to fulfill his obligations hereunder; and (iv) that the undersigned has knowledge of the Borrower's financial condition and affairs.

This Guaranty is made in and shall be construed in accordance with the laws and judicial decisions of the District of Columbia. The undersigned agrees that any dispute arising out of this Guaranty shall be adjudicated in any District of Columbia court or the U.S. District Court for the District of Columbia and in no other forum. For that purpose, the undersigned hereby submits to the jurisdiction of the state and/or federal courts of the District of Columbia. The undersigned waives any defense that venue is not proper for any action brought in any federal or state court in the District of Columbia.

Witness the signature and seal of each of the undersigned.

WITNESS

_____    _____ (SEAL)
B. Horsey                                 DOUGLAS P BENNETT

_____    _____ (SEAL)

        Address of Guarantor(s):    _____2884 WOODLAND DR NW_____

                                    _____WASHINGTON, DC 20008-2742_____

District of Columbia:

I, _____, Notary Public of _____

County, do hereby certify that _____

_____

_____

personally appeared before me this day and acknowledged the due execution of the foregoing instrument in writing.

Witness my hand and seal, this _____ day of _____, _____.

My Commission Expires: _____    _____
                                                                      NOTARY PUBLIC

# EXHIBIT 5

LAW OFFICES
FRIEDLANDER, MISLER,
SLOAN, KLETZKIN &
OCHSMAN, PLLC
1101 17th STREET, NW,
SUITE 700
WASHINGTON, DC

(202) 872-0800

Wash_____, DC

# BB&T SECURITY AGREEMENT

This Security Agreement ("Security Agreement"), is made MARCH 13, 2002 _____, between HUDSON RIVER PARTNERS LP

("Debtor"), and Branch Banking and Trust Company, a North Carolina banking corporation ("Secured Party").

This Security Agreement is entered into in connection with (check applicable items):

- [X] (i) a Loan Agreement ("Loan Agreement") dated on or before the date of this Security Agreement under which the Secured Party has agreed to make a loan(s) and/or establish a line(s) of credit;
- [X] (ii) a promissory note dated MARCH 13, 2002 (including all extensions, renewals, modifications and substitutions thereof, the "Note") of the Debtor or of (the "Borrower"), in the principal amount of $ 700,000.00
- [X] (iii) a guaranty agreement or agreements (whether one or more, the "Guaranty") executed by the guarantors named therein (whether one or more, the "Guarantors") dated on or about the same date as this Security Agreement;
- [ ] (iv) a control agreement covering the Debtor's, Borrower's, or any Guarantor's Deposit Account(s), Investment Property, Letter-of-Credit Rights, or Electronic Chattel Paper dated on or about the same date as this Security Agreement executed by the Debtor, the Borrower, and any such Guarantor;
- [ ] (v) the sale by Debtor and purchase by Secured Party of Accounts, Chattel Paper, Payment Intangibles and/or Promissory Notes; and/or
- [ ] (vi) _____

Secured Party and Debtor agree as follows:

## I. DEFINITIONS.

**1.1 Collateral.** Unless specific items of personal property are described below, the Collateral shall consist of all now owned and hereafter acquired and wherever located personal property of Debtor identified below, each capitalized term as defined in Article 9 of the District of Columbia Uniform Commercial Code ("UCC")(check applicable items):

- [X] (i) Accounts, including all contract rights and health-care-insurance receivables;
- [ ] (i-a) The Account(s), contract right(s) and/or Health-Care-Insurance Receivables specifically described as follows;

- [X] (ii) Inventory, including all returned inventory;
- [ ] (ii-a) The Inventory specifically described as follows:

- [X] (iii) Equipment, including all Accessions thereto, and all manufacturer's warranties, parts and tools therefor;
- [ ] (iii-a) The Equipment, including all Accessions thereto, all manufacturer's warranties therefor, and all parts and tools therefor, specifically described as follows:

- [ ] (iv) Investment Property, including the following certificated securities and/or securities account(s) specifically described as follows:

- [ ] (v) Instruments, including all promissory notes and certificated certificates of deposit specifically described as follows:

- [ ] (vi) Deposit Accounts with Secured Party specifically described below (list account number(s));
- [ ] (vi-a) The Deposit Accounts with other financial institutions specifically described as follows (list financial institution and account numbers):

- [ ] (vii) Chattel Paper (whether tangible or electronic);
- [ ] (vii-a) The Chattel Paper specifically described as follows:

- [ ] (viii) Goods, including all Fixtures and timber to be cut, located or situated on the real property specifically described as follows (list legal description as shown on deed including county and state):

ACCOUNT# / NOTE#
9560082298     00002

1476DC (0105)



Page 1 of 6

- [ ] (ix) Farm Products, including all crops grown, growing ~~~~~ grown, livestock (born and unborn), supplies used or produc ~~~ing operation, and products of crops and livestock;
- [ ] (ix-a) The Farm Products specifically described as follows:

- [ ] (x) As-Extracted Collateral from the following location(s) (list legal description including county and state):

- [ ] (xi) The Letter-of-Credit Rights under the following letter(s) of credit (list issuer, number and amount):

- [ ] (xii) Documents of Title, including all warehouse receipts and bills of lading specifically described as follows:

- [ ] (xiii) Commercial Tort Claim(s) more specifically described as follows:

- [ ] (xiv) Money, including currency and/or rare coins delivered to and in possession of the Secured Party specifically described as follows:

- [ ] (xv) Software specifically described as follows:

- [ ] (xvi) Manufactured Home(s):

| Model | Year | Serial Number 1 | Doublewide Serial Number 2 |
|---|---|---|---|
| 1. | | | |
| 2. | | | |

- [ ] (xvii) Vehicles, including recreational vehicles and watercraft described below:

| New/Used | Year/Make | Model/Body Type | VIN Number/Serial Number |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

- [x] (xviii) General intangibles, including all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses, and the following, if any:

- [x] (xix) Supporting Obligations;

- [x] (xx) to the extent not listed above as original collateral, all proceeds (cash and non-cash) and products of the foregoing.

1.2 **Obligations.** This Security Agreement secures the following (collectively, the "Obligations"):

    (i) Debtor's or Borrower's obligations under the Note, the Loan Agreement, and this Security Agreement, and in addition to the foregoing obligations, if the Debtor is a Guarantor, its obligations under its Guaranty;

    (ii) all of Debtor's or Borrower's present and future indebtedness and obligations to Secured Party;

    (iii) the repayment of (a) any amounts that Secured Party may advance or spend for the maintenance or preservation of the Collateral, and (b) any other expenditures that Secured Party may make under the provisions of this Security Agreement or for the benefit of Debtor or Borrower;

    (iv) all amounts owed under any modifications, renewals, extensions or substitutions of any of the foregoing obligations;

    (v) all Default Costs, as defined in Paragraph VIII of this Security Agreement; and

    (vi) any of the foregoing that may arise after the filing of a petition by or against Debtor or Borrower under the Bankruptcy Code, even if the obligations do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise.

1.3 **UCC.** Any term used in the UCC and not otherwise defined in this Security Agreement has the meaning given to the term in the UCC.

II. **GRANT OF SECURITY INTEREST.**
Debtor grants a security interest in the Collateral to Secured Party to secure the payment and performance of the Obligations.

III. **PERFECTION OF SECURITY INTERESTS.**

3.1 **Filing of Security Interests.**

(i) Debtor authorizes Secured Party to execute on the Debtor's behalf and file any financing statement (the "Financing Statement") describing the Collateral in any location deemed necessary and appropriate by Secured Party.

(ii) Debtor authorizes Secured Party to file a Financing Statement describing any agricultural liens or other statutory liens held by Secured Party.

(iii) Secured Party shall receive prior to the closing an official report from the Secretary of State of each Place of Business and the Debtor State, each as defined below, collectively (the "Filing Reports") indicating that Secured Party's security interest is prior to all other security interests or other interests reflected in the report.

3.2 **Possession.**

(i) Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Security Agreement or where Secured Party chooses to perfect its security interest by possession in addition to the filing of a Financing Statement.

(ii) Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.

3.3 **Control Agreements.** Debtor will cooperate with Secured Party in obtaining a control agreement in form and substance satisfactory to Secured Party with respect to Collateral consisting of (check appropriate items):

☐ Deposit Accounts (for deposit accounts at other financial institutions);

☐ Investment Property for securities accounts, mutual funds and other uncertificated securities;

☐ Letter-of-credit rights; and/or

☐ Electronic chattel paper.

3.4 **Marking of Chattel Paper.** If Chattel Paper is part of the Collateral, Debtor will not create any Chattel Paper without placing a legend on the Chattel Paper acceptable to Secured Party indicating that Secured Party has a security interest in the Chattel Paper.

IV. **POST-CLOSING COVENANTS AND RIGHTS CONCERNING THE COLLATERAL.**

4.1 **Inspection.** The parties to this Security Agreement may inspect any Collateral in the other party's possession, at any time upon reasonable notice.

4.2 **Personal Property.** Except for items specifically identified by Debtor and Secured Party as Fixtures, the Collateral shall remain personal property at all times, and Debtor shall not affix any of the Collateral to any real property in any manner which would change its nature from that of personal property to real property or to a fixture.

4.3 **Secured Party's Collection Rights.** Secured Party shall have the right at any time to enforce Debtor's rights against any account debtors and obligors.

4.4 **Limitations on Obligations Concerning Maintenance of Collateral.**

(i) **Risk of Loss.** Debtor has the risk of loss of the Collateral.

(ii) **No Collection Obligation.** Secured Party has no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

4.5 **No Disposition of Collateral.** Secured Party does not authorize, and Debtor agrees not to:

(i) make any sales or leases of any of the Collateral;

(ii) license any of the Collateral; or

(iii) grant any other security interest in any of the Collateral.

4.6 **Purchase Money Security Interests.** To the extent Debtor uses the Loan to purchase Collateral, Debtor's repayment of the Loan shall apply on a "first-in-first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order the Debtor purchased the Collateral.

4.7 **Insurance.** Debtor shall obtain and keep in force such insurance on the Collateral as is normal and customary in the Debtor's business or as the Secured Party may require, all in such amounts, under such forms of policies, upon such terms, for such periods and written by such insurance companies as the Secured Party may approve. All policies of insurance will contain the long-form Lender's Loss Payable clause in favor of the Secured Party, and the Debtor shall deliver the policies or complete copies thereof to the Secured Party. Such policies shall be noncancellable except upon thirty (30) days' prior written notice to the Secured Party. The proceeds of all such insurance, if any loss should occur, may be applied by the Secured Party to the payment of the Obligations or to the replacement of any of the Collateral damaged or destroyed, as the Secured Party may elect or direct in its sole discretion. The Debtor hereby appoints (which appointment constitutes a power coupled with an interest and is irrevocable as long as any of the Obligations remain outstanding) Secured Party as its lawful attorney-in-fact with full authority to make, adjust, settle claims under and/or cancel such insurance and to endorse the Debtor's name on any instruments or drafts issued by or upon any insurance companies.

V. **DEBTORS REPRESENTATIONS AND WARRANTIES.**
Debtor represents and warrants to Secured Party:

5.1 **Title to and transfer of Collateral.** It has rights in or the power to transfer the Collateral and its title to the Collateral is free of all adverse claims, liens, security interests and restrictions on transfer or pledge except as created by this Security Agreement.

5.2 **Location of Collateral.** All collateral consisting of goods (equipment, inventory, fixtures, crops, unborn young of animals, timber to be cut, manufactured homes; and other tangible, movable personal property) is located solely in the following States (the "Collateral States"): DC, NY

5.3 **Location, State of Incorporation and Name of Debtor.** Debtor's:

(i) chief executive office (if Debtor has more than one place of business), place of business (if Debtor has one place of business), or principal residence (if Debtor is an individual), is located in the following State and address (the "Place of Business"): 700 NEW HAMPSHIRE AVE NW # 415, WASHINGTON, DC 20037

(ii) state of incorporation or organization is DELAWARE (the "Debtor State");

(iii) exact legal name is as set forth in the first paragraph of this Security Agreement.

5.4 **Business Purpose.** None of the Obligations is a Consumer Transaction, as defined in the UCC and none of the Collateral has been or will be purchased or held primarily for personal, family or household purposes.

## VI. DEBTORS COVENANTS.

Until the Obligations are paid in full, Debtor agrees that it will:

6.1 preserve its legal existence and not, in one transaction or a series of related transactions, merge into or consolidate with any other entity, or sell all or substantially all of its assets;

6.2 not change the Debtor State of its registered organization;

6.3 not change its registered name without providing Secured Party with 30 days' prior written notice; and

6.4 not change the state of its Place of Business or, if Debtor is an individual, change his state of residence without providing Secured Party with 30 days' prior written notice.

## VII. EVENTS OF DEFAULT.

The occurrence of any of the following shall, at the option of Secured Party, be an Event of Default:

7.1 Any default or Event of Default by Borrower or Debtor under the Note, Loan Agreement, any of the other loan documents, and Guaranty or any of the other Obligations;

7.2 Debtor's failure to comply with any of the provisions of, or the incorrectness of any representation or warranty contained in, this Security Agreement, the Note, the Loan Agreement, or in any other document relating to the Obligations;

7.3 Transfer or disposition of any of the Collateral, except as expressly permitted by this Security Agreement;

7.4 Attachment, execution or levy on any of the Collateral;

7.5 Debtor voluntarily or involuntarily becoming subject to any proceeding under (a) the Bankruptcy Code or (b) any similar remedy under state statutory or common law;

7.6 Debtor shall fail to comply with, or become subject to any administrative or judicial proceeding under any federal, state or local (a) hazardous waste or environmental law, (b) asset forfeiture or similar law which can result in the forfeiture of property, or (c) other law, where noncompliance may have any significant effect on the Collateral; or

7.7 Secured Party shall receive at any time following the closing a UCC filing report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

## VIII. DEFAULT COSTS.

8.1 Should an Event of Default occur, Debtor will pay to Secured Party all costs incurred by the Secured Party for the purpose of enforcing its rights hereunder, including:

   (i) costs of foreclosure;

   (ii) costs of obtaining money damages; and

   (iii) a reasonable fee for the service of attorneys employed by Secured Party for any purpose related to this Security Agreement or the Obligations, including without limitation consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration.

## IX. REMEDIES UPON DEFAULT.

9.1 **General.** Upon any Event of Default, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise.

9.2 **Concurrent Remedies.** Upon any Event of Default, Secured Party shall have the right to pursue any of the following remedies separately, successively or concurrently:

   (i) File suit and obtain judgment and, in conjunction with any action, Secured Party may seek any ancillary remedies provided by law or at equity, including levy of attachment and garnishment.

   (ii) Take possession of any Collateral if not already in its possession without demand and without legal process. Upon Secured Party's demand, Debtor will assemble and make the Collateral available to Secured Party as it directs. Debtor grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.

   (iii) Without taking possession, sell, lease or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

## X. FORECLOSURE PROCEDURES.

10.1 **No Waiver.** No delay or omission by Secured Party to exercise any right or remedy accruing upon any Event of Default shall (a) impair any right or remedy, (b) waive any default or operate as an acquiescence to the Event of Default, or (c) affect any subsequent default of the same or of a different nature.

10.2 **Notices.** Secured Party shall give Debtor such notice of any private or public sale as may be required by the UCC.

10.3 **Condition of Collateral.** Secured Party has no obligation to repair, clean-up or otherwise prepare the Collateral for sale.

10.4 **No Obligation to Pursue Others.** Secured Party has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them and Secured Party may release, modify or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Secured Party's rights against Debtor. Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Obligations.

10.5 **Compliance With Other Laws.** Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

10.6 **Warranties.** Secured Party may sell the Collateral without giving any warranties as to the Collateral and may specifically disclaim any warranties of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

10.7 **Sales on Credit.** If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale as and when received, less expenses.

10.8 **Purchases by Secured Party.** In the event Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting some or all of the Obligations of the Debtor.

10.9 **No Marshalling.** Secured Party have no obligation to marshal any assets in favor of Debtor, or against or in payment of:

  (i) the Note,

  (ii) any of the other Obligations, or

  (iii) any other obligation owed to Secured Party, Borrower or any other person.

XI. **MISCELLANEOUS.**

11.1 **Assignment.**

  (i) **Binds Assignees.** This Security Agreement shall bind and shall inure to the benefit of the successors and assigns of Secured Party, and shall bind all heirs, personal representatives, executors, administrators, successors and permitted assigns of Debtor.

  (ii) **No Assignments by Debtor.** Secured Party does not consent to any assignment by Debtor except as expressly provided in this Security Agreement.

  (iii) **Secured Party Assignments.** Secured Party may assign its rights and interests under this Security Agreement. If an assignment is made, Debtor shall render performance under this Security Agreement to the assignee. Debtor waives and will not assert against any assignee any claims, defenses or set-offs which Debtor could assert against Secured Party except defenses which cannot be waived.

11.2 **Severability.** Should any provision of this Security Agreement be found to be void, invalid or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of this Security Agreement.

11.3 **Notices.** Any notices required by this Security Agreement shall be deemed to be delivered when a record has been (a) deposited in any United States postal box if postage is prepaid, and the notice properly addressed to the intended recipient, (b) received by telecopy, (c) received through the Internet, and (d) when personally delivered.

11.4 **Headings.** Section headings used in this Security Agreement are for convenience only. They are not a part of this Security Agreement and shall not be used in construing it.

11.5 **Governing Law.** This Security Agreement is being executed and delivered and is intended to be performed in the District of Columbia and shall be construed and enforced in accordance with the laws of the District of Columbia, except to the extent that the UCC provides for the application of the law of the Debtor State.

11.6 **Rules of Construction.**

  (i) No reference to "proceeds" in this Security Agreement authorizes any sale, transfer, or other disposition of the Collateral by the Debtor except in the ordinary course of business.

  (ii) "Includes" and "including" are not limiting.

  (iii) "Or" is not exclusive.

  (iv) "All" includes "any" and "any" includes "all."

11.7 **Integration and Modifications.**

  (i) This Security Agreement is the entire agreement of the Debtor and Secured Party concerning its subject matter.

  (ii) Any modification to this Security Agreement must be made in writing and signed by the party adversely affected.

11.8 **Waiver.** Any party to this Security Agreement may waive the enforcement of any provision to the extent the provision is for its benefit.

11.9 **Further Assurances.** Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

The parties have signed this Security Agreement under seal as of the day and year first above written.

**If Debtor is a Corporation:**

_____
NAME OF CORPORATION

ATTEST: _____     By: _____

Title: _____       Title: _____

(Corporation Seal)  (Affix seal or insert name of corporation in seal to adopt as seal of Debtor)

By: _____

Title: _____

**If Debtor is a Partnership, Limited Liability Company, or Limited Liability Partnership**

WITNESS:

/s/ Greg Bing

HUDSON RIVER PARTNERS LP
NAME OF PARTNERSHIP, LLC, OR LLP

By: /s/ _____ (SEAL)
GENERAL PARTNER OR MANAGER

_____

By: _____ (SEAL)
GENERAL PARTNER OR MANAGER

_____

By: _____ (SEAL)
GENERAL PARTNER OR MANAGER

**If Debtor is an Individual:**

WITNESS:

_____
TYPE NAME OF DEBTOR

_____     _____ (SEAL)

_____
TYPE NAME OF DEBTOR

_____     _____ (SEAL)